UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZION WEBB,<br><br>                Plaintiff,<br>v.<br><br>SCOTT SEMPLE, ROLLIN COOK,<br>CARLETON GILES, RICHARD SPARACO<br>& YADIRO OTERO,<br><br>                Defendants. | Civil Action No.<br>3:19-CV-00678 (CSH)<br><br><br>JULY 1, 2019 |

## INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

Plaintiff Zion Webb, a convicted prisoner currently incarcerated at the Osborn Correctional Institution in Somers, Connecticut, has filed a civil rights complaint *pro se* pursuant to 42 U.S.C. § 1983 against five Connecticut Department of Correction ("DOC") officials in their official and individual capacities: former Commissioner Scott Semple, Commissioner Rollin Cook, Board of Pardons and Paroles Chairman Carleton Giles, Warden Yadira Otero, and Director of Parole and Community Services Division Richard Sparaco. Doc. 1 ("Compl.") at 2–3. Webb claims that the Defendants acted under color of state law to violate his Fourteenth Amendment right to equal protection of the laws by treating him differently than other similarly situated inmates with respect to applying earned credits to advance his parole eligibility date. *Id.* at 8–9. For the following reasons, his Complaint is dismissed in full.

        **I.    STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss

any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2) (2012). Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012)

---

[1] The Second Circuit has consistently adhered to the United States Supreme Court's plausibility standard set forth in *Iqbal*. *See, e.g., Giunta v. Dingman,* 893 F.3d 73, 79 (2d Cir. 2018); *Bd.-Tech Elec. Co. v. Eaton Corp.,* 737 F. App'x 556, 558 (2d Cir. 2018); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017).

(quoting *Iqbal*, 556 U.S. at 678). See also *Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)). See also *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (declaring that where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[].").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state

3

a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

## II. FACTUAL ALLEGATIONS

In March 2011, Webb was charged with robbery in the first degree with a firearm in violation of Connecticut General Statutes § 53a-134(a)(4). Compl. ¶ 1.[2] He was convicted of the offense in February 2012 after pleading guilty and sentenced to twelve years in prison. *Id.* At the time of his conviction, he was required to serve at least eighty-five percent of his sentence before becoming eligible for parole under Connecticut General Statutes § 54-125a. *Id.* ¶ 2.

On July 1, 2011, the state legislature had amended Conn. Gen. Stat. § 54-125a by Public Act 11-51, § 25 to allow inmates incarcerated after October 1, 1990, who had served not less than fifty percent of their definite or aggregate sentences, less any risk reduction earned credit ("RREC") under Section 22 of the Act, to become eligible for parole. *Id.* ¶ 3. Section 22 of the Act, codified at Conn. Gen. Stat. § 18-98e, provided that the eligibility of inmates to earn RREC was at the discretion of the Commissioner. *Id.* at 4. While Conn. Gen. Stat. § 18-98e identified certain crimes as exceptions to RREC eligibility, Webb was not convicted of any of these crimes. As such, Webb and other inmates convicted of robbery in the first degree were eligible to earn RREC upon satisfaction of certain conditions, including adherence to their inmate offender accountability plan, good conduct,

---

[2] The paragraph numbers cited to therein refer to those in the "Statement of Case" section of the Complaint.

obedience to prison regulations, and participation in programs and activities. *Id.* ¶ 5.

On April 25, 2012, then-Commissioner Semple expanded the list of crimes ineligible for RREC to include felony murder, arson murder, and aggravated sexual assault. *Id.* ¶ 6. Webb's crime, robbery in the first degree, was not a violent offense precluded from RREC. *Id.* Thus, Webb was permitted to continue earning RREC and accelerate his parole eligibility date. *Id.* On July 1, 2013, however, Webb received a memorandum signed by Chairman Giles stating that his RREC would no longer be applied to advance his parole eligibility date. *Id.* ¶ 7.

On December 4, 2018, Webb discovered that another inmate who had also been convicted of robbery in the first degree was still permitted to advance his parole eligibility date through RREC. *Id.* ¶ 8. Webb has a Level 2 security classification, does not have any documented assaults on DOC staff or gang affiliation, and has maintained employment for the past three years as a certified nursing assistant. *Id.* ¶ 9. Nevertheless, other similarly situated inmates convicted of the same offense were permitted to have their RREC applied to accelerate their parole eligibility date. *Id.*

Webb contends that Defendant Sparaco, Director of Parole and Community Services, has instituted a policy that allows only certain violent offenders and violent offenders who committed their crimes between July 1, 2011, and July 1, 2013, to have their RREC applied to accelerate their parole eligibility dates. *Id.* ¶ 10. Under this policy, Webb's parole eligibility date could not be accelerated despite the fact that he continues to receive RREC. *Id.* ¶ 11.

Webb alleges that he has exhausted his administrative remedies after having filed an "Administrative Remedy," but Defendant Yadira Otero, who is the warden, denied his request. *Id.* ¶¶ 13–14. He now files this action "to end the pattern and practice of denial of equal protection of laws in addition to denial of equal treatment amongst similarly situated prisoners." *Id.* ¶ 16.

## III. **DISCUSSION**

Based on these allegations, Webb sets forth three claims against the Defendants: (1) denial of equal treatment by treating him disparately from other similarly situated inmates; (2) denial of equal protection of the laws by discriminating against him in an arbitrary manner when intentionally excluding him from the application of Connecticut state law, Public Act 11-15, §§ 22, 25; and (3) failure by Defendants Semple, Cook, Giles, and Sparaco to adequately supervise their subordinates to ensure that they adhere to the laws set forth by the Constitution, *i.e.*, equal protection of laws with respect to persons similarly situated. Compl. ¶ 17–23.

This Court had previously decided a nearly identical case in *Green v. Semple*, No. 3:19-CV-410 (CSH), 2019 WL 2016779 (D. Conn. May 7, 2019). The plaintiff in that case had also committed an offense before July 1, 2011, and raised the same equal protection claims alleging disparate treatment from another similarly situated inmate who had committed the same offense between July 1, 2011, and July 1, 2013, but was permitted to have his RREC accelerate his parole eligibility date. *Id.* at *2. The legal reasoning in *Green* applies to Webb's case as well, and so the Court will rely upon that opinion here extensively.

**A.     Counts One and Two – Violation of Equal Protection**

Webb raises the underlying argument in both of his equal protection counts, alleging that the Defendants have violated his equal protection rights by applying RREC to accelerate a similarly situated inmate's parole eligibility while not affording Webb the same policy. Compl. ¶¶ 17–20. As such, the Court will analyze these claims together.

As in *Green*, Webb can only proceed with his equal protection claims on a "class of one" theory:

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). It protects individuals, such as prisoners, from invidious discrimination. Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009). In order for Green to prevail on such a claim, he must demonstrate that he was "treated differently from other similarly situated individuals and that the reason for this different treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Id.* (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).

In general, equal protection claims arise from the fact that a person was treated differently because of his or her membership in a protected class. In the case at bar, [Plaintiff] has not asserted or alleged that he is a member of a protected class or that he was mistreated based on a suspect classification. He must therefore pursue his claim based on a "class of one" theory.

In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the United States Supreme Court held that an individual may state an equal protection violation under a 'class of one' theory by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. Moreover, the plaintiff must establish an "extremely high degree of similarity" with the person to whom he is comparing himself. *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). In other words, he must demonstrate the existence of a "comparator"—someone who is "prima facie identical"—who was treated differently. *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 198 (D. Conn. 2010). *See also Davis v. Giles*, No. 3:17-CV-1176 (AWT), 2018 WL 2172717, at *6 (D. Conn. May 10, 2018) ("The plaintiff's circumstances and the other person's circumstances must be 'prima facie identical.'").

Here, Plaintiff has not challenged the constitutionality of a statute, but rather the selective application of it. To state a claim for selective enforcement of a law under a "class of one" equal protection theory, [Plaintiff] must allege facts demonstrating that he was treated differently from similarly situated individuals and that the reason for

7

> the disparate treatment was based on "impermissible considerations."
> *Diesel*, 232 F.3d at 103 (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

*Green v. Semple*, No. 3:19-CV-410 (CSH), 2019 WL 2016779, at *3–4 (D. Conn. May 7, 2019).

Webb identifies a comparator in an unnamed fellow prisoner "who was also a violent offender convicted of robbery in the first degree just like the plaintiff" but was still eligible to have his RREC applied to accelerate his parole eligibility date. Compl. ¶ 8. However, this prisoner had committed his offense between July 1, 2011, and July 1, 2013. *Id.* ¶ 18. Webb had committed his offense and charged a few months before this period in March 2011. *Id.* ¶ 1.

This difference in commission date suffices as a rational basis for disparate treatment between Webb and his comparator. As elucidated in more detail in *Breton v. Comm'r of Corr.*, 196 A.3d 789 (Conn. 2018), retroactive application of the 2013 amendment to Conn. Gen. Stat. § 54-125a(b)(2) violated the ex post facto clause for those who had committed crimes between the implementation of Conn. Gen. Stat. § 18-98e on July 1, 2011, that allowed for certain inmates to earn RREC to accelerate their date for parole eligibility, and its amendment effective on July 1, 2013, that removed this possibility. Offenders who committed their crimes before July 1, 2011, or after July 1, 2013, experienced no such violations. *See Green*, 2019 WL 2016779, at *5 ("Furthermore, there is no constitutional right to continue that benefit post July 1, 2013, if an inmate committed his offense before the 2011 amendment created the benefit."). This disparate treatment, tailored to prevent ex post facto violations in light of the legislative history concerning RREC, is thus rational. There is a valid reason for the change in policy to accord certain inmates, such as Webb's comparator, who had committed their offenses between July 1, 2011, and July 1, 2013, the right to advance their parole eligibility dates based upon RREC, but not inmates like Webb whose offenses

8

were committed before this time period. "In the absence of proof of a true comparator (*i.e.*, an inmate who committed a crime before the 2011 revision and had his RREC applied to his parole eligibility date after July 1, 2013), Plaintiff cannot state a plausible 'class of one' equal protection claim." *Green*, 2019 WL 2016779, at *7. Accordingly, the Court will dismiss both equal protection counts as failing to state claims upon which relief may be granted.

**B.     Supervisory Liability**

In his remaining claim, Webb asserts that Defendants Semple, Cook, Giles, and Sparaco "failed to adequately supervise their subordinates after being made aware of constitutional violations through a report or appeal and failing to ensure that they were adhering to the laws and treaties of the U.S. Constitution and the failure to do so" violated his right to the equal protection of laws. Compl. ¶ 22.

"It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of respondeat superior does not suffice for claim of monetary damages under § 1983). As explained *supra*, Webb has failed to state a plausible claim for deprivation of his constitutional right to equal protection. Accordingly, his supervisory liability claims against officials for failing to supervise subordinates to prevent equal protection violations also fail.

## IV.  CONCLUSION AND ORDER

In accordance with the foregoing analysis, the Court DISMISSES WITH PREJUDICE all

claims against Defendants, pursuant to 28 U.S.C. § 1915A(b)(1).[3] Based on the commission dates of the inmates' crimes, Defendants have a rational basis for their policy that distinguishes between inmates whose RREC could be disregarded with respect to advancing their parole eligibility date, such as Webb, and those whose RREC could not due to the ex post facto clause, like his comparator. The Clerk is directed to enter judgment and close this case.

    It is SO ORDERED.

    Dated: New Haven, Connecticut
          July 1, 2019

                                        */s/ Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

---

[3] Applying leniency to *pro se* litigants, the Court often dismisses non-plausible claims in the complaint without prejudice to amendment. However, in the case at bar, the demonstrated facts prevent the possibility of a valid equal protection claim with respect to the cited statute. Dismissal is thus with prejudice.